UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| TAMMY SHEA BRADY, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE OF THE ESTATE OF CHARLES BRADY AND<br>TAMMY SHEA BRADY, AS GUARDIAN OF ERIC THOMAS BRADY, A MINOR, AND<br>TAMMY SHEA BRADY, AS GUARDIAN OF SARAH SHEA BRADY, A MINOR, AND<br>TAMMY SHEA BRADY, AS GUARDIAN OF HANNAH MARIE BRADY, A MINOR<br><br>　　　　　　PLAINTIFFS<br><br>v.<br><br>PFIZER INC.<br>AND<br>JOHN DOE ONE<br>AND<br>JOHN DOE TWO<br>AND<br>ROBERT S. TILLETT, JR., M.D.<br>AND<br>LOUISVILLE NEUROLOGY ASSOCIATES, PSC<br><br>　　　　　　DEFENDANTS | CIVIL ACTION NO. 3:07CV206-R _____ |

**NOTICE OF REMOVAL**

Defendant Pfizer Inc. ("Pfizer"), by its undersigned counsel, with reservation of all defenses, hereby removes the above-captioned action from the Jefferson Circuit Court, Jefferson County, Kentucky, to the United State District Court for the Western District of Kentucky, Louisville Division, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, and respectfully states:

1. On or about March 21, 2007, plaintiffs (Tammy Shea Brady, Individually, and as Personal Representative of the Estate of Charles Brady; Tammy Shea Brady, as Guardian of Eric Thomas Brady, a minor; Tammy Shea Brady, as Guardian of Sarah Shea Brady, a minor; Tammy Shea Brady, as Guardian of Hannah Marie Brady, a minor) filed this civil action against Pfizer, fictitious defendants John Doe One and John Doe Two, Robert S. Tillett, Jr., M.D. and Louisville Neurology Associates, PSC, in the Jefferson Circuit Court, Case No. 07-CI-002826.

2. This action involves allegations regarding the prescription medication Bextra®. On September 6, 2005, the MDL Panel issued an order, pursuant to 28 U.S.C. § 1407, establishing an MDL proceeding in the Northern District of California (MDL-1699) for such Bextra®-related actions. *See In re Bextra & Celebrex Mktg. Sales Pras. & Prods. Liab. Litig.*, 391 F. Supp. 2d 1377 (J.P.M.L. 2005). Pfizer intends to inform the MDL Panel that this case is a potential tag-along action transferable to MDL-1699 pursuant to Rules 7.4 and 7.5 of the Rules of Procedure of the JPML. *See* Rules of Procedure of the Judicial Panel on Multidistrict Litig., 199 F.R.D. 425 (J.P.M.L. 2001). Numerous cases involving personal injury allegations relating to the use of the prescription medications Bextra® and Celebrex® have transferred to MDL-1699 from this District, and the Judges in this District have stayed or deferred all proceedings pending MDL transfer.[1]

3. As more fully set out below, this case is properly removed to this Court pursuant to 28 U.S.C. § 1441 because Pfizer has satisfied the procedural requirements for removal, and this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1441(a) and § 1332.

---

[1] With the filing of this Notice of Removal, Pfizer will also be filing a Motion to Stay or Defer Proceedings Pending Decision on Transfer to the Multidistrict Litigation.

I.  **PFIZER HAS SATISFIED THE PROCEDURAL REQUIREMENTS FOR REMOVAL.**

4.  This Notice of Removal is being filed within 30 days of March 23, 2007, the date on which Pfizer was served with a copy of the Complaint. Therefore, this Notice of Removal is timely pursuant to 28 U.S.C. § 1446(b). *See Murphy Bros., Inc. v. Michetti Pipe Springing, Inc.*, 526 U.S. 344, 354 (1999).

5.  The Jefferson Circuit Court is located within the Western District of Kentucky, Louisville Division, and therefore this action is properly removed to this Court pursuant to 28 U.S.C. § 97(b) because it is the "district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

6.  Pfizer need not obtain the consent of the fictitious "John Doe" defendants because their citizenship must be disregarded for purposes of determining removal and diversity jurisdiction. *See* 28 U.S.C. § 1441(a) ("For purposes of removal ... the citizenship of defendants sued under fictitious names shall be disregarded"); *Alexander v. Electronic Data Sys. Corp.*, 13 F.3d 940, 948 (6th Cir. 1994) (citizenship of "Jane Doe" defendant is "disregarded for purposes of diversity jurisdiction"); *see generally Jernigan v. Ashland Oil Inc.*, 989 F.2d 812, 815 (5th Cir. 1993) ("application of this requirement [of consent] to improperly or fraudulently joined parties would be nonsensical, as removal in those cases is based on the contention that no other proper defendant exists").

7.  Pfizer need not obtain the consent of defendants, Dr. Tillett and Louisville Neurology Associates, PSC, because, as set out more fully below, they have been fraudulently joined in this action in an attempt to defeat removal. *See, e.g., Anderson v. Merck & Co.*, 417 F. Supp. 2d 842, 845 n.3 (E.D. Ky. 2006) ("[A] removing defendant need not obtain the consent of

parties who are fraudulently joined.") (citations omitted); *Weiss v. Fujisawa Pharm. Co.*, 415 F. Supp. 2d 720, 722 n.7 (E.D. Ky. 2005) (same).

8. No further proceedings have been had in the state court action.

9. No previous application has been made for the relief requested herein.

10. Pursuant to 28 U.S.C. § 1446(a), a copy of all process, pleadings, and orders served upon Pfizer, which papers include the summons and complaint, is attached as Exhibit A. Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served upon counsel for the plaintiffs, and a copy is being filed with the Clerk of the Jefferson Circuit Court.

## II. REMOVAL IS PROPER IN THIS CASE.

11. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because this is a civil action in which there is complete diversity between the properly joined parties and the amount in controversy exceeds the sum of $75,000 exclusive of costs and interest.

### A. Complete Diversity of Citizenship.

12. There is complete diversity between the plaintiffs—Tammy Shea Brady, Individually, and as Personal Representative of the Estate of Charles Brady; Tammy Shea Brady, as Guardian of Eric Thomas Brady, a minor; Tammy Shea Brady, as Guardian of Sarah Shea Brady, a minor; and Tammy Shea Brady, as Guardian of Hannah Marie Brady, a minor—and the properly joined defendant, Pfizer.

13. Upon information and belief, Tammy Shea Brady, Eric Thomas Brady, Sarah Shea Brady, and Hannah Marie Brady are, and were at the time this action was filed, and Charles Brady was at all relevant times, residents and citizens of the Commonwealth of Kentucky. *See* Compl. ¶¶ 1-7; *see also* 28 U.S.C. § 1332(c)(2) ("the legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as the decedent, and the legal

representative of an infant or incompetent shall be deemed to be a citizen only of the same State as the infant or incompetent").

14.     None of the properly joined defendants is a citizen of the Commonwealth of Kentucky. Pfizer is, and was at the time the plaintiffs filed this action, a Delaware corporation with its principal place of business in New York. *See* Compl. ¶ 8. Therefore, it is a citizen of Delaware and New York for purposes of determining diversity. *See* 28 U.S.C. § 1332(c)(1).

15.     The citizenship of fictitious "John Doe" defendants must be disregarded for purposes of removal. *See* 28 U.S.C. § 1441(a); *Alexander*, 13 F.3d at 948.

16.     Plaintiffs allege that defendant Dr. Tillett is a resident of Kentucky and his employer, defendant Louisville Neurology Associates, PSC, is a Kentucky corporation with its principal place of business in Kentucky. Compl. ¶¶ 10-11. Assuming Dr. Tillett and Louisville Neurology Associates, PSC, are citizens of Kentucky, their presence does not defeat diversity jurisdiction because they were fraudulently joined to this action. *See, e.g., Coyne ex. Rel. Ohio v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999) ("A fraudulent joinder of a non-diverse defendant will not defeat removal of a case to federal court.").

17.     Pursuant to the fraudulent joinder doctrine, courts disregard the citizenship of in-state defendants where, as here, the plaintiffs cannot establish a cause of action against non-diverse defendants under state law. *See, e.g., Anderson*, 417 F. Supp. 2d at 849 (denying remand because there was no colorable basis for predicting that plaintiffs could prevail against non-diverse sales representative in state court); *Weiss*, 415 F. Supp. 2d at 723-24 (same); *Salisbury v. Purdue Pharma L.P.*, 166 F. Supp. 2d 546, 548 (E.D. Ky. 2001); *Cofer v. Horsehead Research & Dev. Co.*, 805 F. Supp. 541, 544 (E.D. Tenn. 1991). Importantly, the removing party is not required to show there is absolutely no basis for recovery. Rather, the inquiry is based on a

reasonableness standard. *Alexander*, 13 F.3d at 949; *accord Anderson*, 417 F. Supp. 2d at 846 ("there is no reasonable basis for predicting that Kentucky law might impose liability upon the [fraudulently joined defendants]").

18.     Here, there is no reasonable basis to predict that the plaintiffs will prevail on their claim of negligence against the physician and his group who allegedly prescribed or otherwise provided Bextra® to the deceased, Charles Brady.  According to the plaintiffs, Dr. Tillett was negligent in *prescribing* Bextra® for Charles Brady.  Compl. ¶¶ 145-153.  In direct contravention of their repeated allegations that Bextra®'s "labeling was misleading regarding the [drug's] purported risks and benefits" and "was *inadequate to alert physicians . . . to the dangerous risks and adverse cardiovascular events associated with said drug*," e.g., Compl. ¶ 74 (emphasis added), plaintiffs claim Dr. Tillet "knew of should have known that Bextra® posed *real and substantial risks of adverse cardiovascular events*, but failed to fully and adequately consider those risks or disclose them to [decedent]," *id.* ¶ 149 (emphasis added); *see id.* ¶ 150 (claiming Dr. Tillet "fail[ed] to be aware of or consider the real and substantial risks that Bextra® posed of *adverse cardiovascular events*" and failed to determine whether the drug was appropriate given the "other risks to decedent]") (emphasis added).  *Compare id.* ¶ 33 ("Pfizer has never conducted any testing meant to determine the risk of cardiovascular and thromboembolic events") *and id.* ¶ 68(g)-(i) (asserting Pfizer "[m]ade no meaningful effort to report actual adverse events to the FDA, or to *inform prescribers* . . . of the same," and "actively concealed information . . . about the adverse cardiovascular events") (emphasis added) *with id.* ¶ 150 (alleging Dr. Tillet was negligent for failing to warn of "adverse events associated with Bextra®").  As shown below, however, numerous courts have recognized that claims such as

those set forth above against a physician for negligent prescription are not compatible with claims against a pharmaceutical manufacturer for failure to warn of a drug's alleged risks.

19.   As a threshold matter, Dr. Tillett's alleged decision to prescribe Bextra® could only have been negligent or violated a "duty of care" if he knew or should have known of the alleged hazards from Bextra®. *See, e.g., Grubbs v. Barbourville Family Health Ctr., P.S.C.*, 120 S.W.3d 682, 687 (Ky. 2003); *Mullins v. Commonwealth Life Ins. Co.*, 839 S.W.2d 245, 247 (Ky. 1992). Plaintiffs' factual allegations in the Complaint defeat any such conclusion. As shown, the essence of plaintiffs' litany of allegations is that Pfizer concealed and misrepresented information about the purported dangers of Bextra® from physicians and patients. For example, plaintiffs allege that Pfizer failed to conduct adequate studies to establish the safety of Bextra® and that it never disclosed on warning labels that such testing had not been performed, thereby "fraudulently inducing health care providers and patients alike" to use Bextra® under the "false assumption" that they had been sufficiently tested (Compl. ¶ 51); that Pfizer "misrepresented material facts regarding the safety and efficacy of Bextra® and failed to inform and did conceal these material facts from Charles Brady, *physicians* and the general public" (Compl. ¶ 81 (emphasis added)); that this alleged "continuous and ongoing course of action constituting fraud and misrepresentation on Charles Brady, *physicians*, and the general public started as early as 1999" (Compl. ¶ 83 (emphasis added)); and that Pfizer "misrepresented the efficacy and safety of Bextra® to Plaintiffs through its advertising, promotion and sales efforts, as directed to Plaintiffs, the local community, prescribing physicians and the FDA" (Compl. ¶ 111).

20.   Faced with nearly identical allegations, numerous federal courts have found that physician-defendants are fraudulently joined. *See, e.g., Omobude v. Merck & Co.*, No. 3:03CV528LN, slip op. at 4 (S.D. Miss. Oct. 3, 2003) (attached hereto as Exhibit B) (physician

fraudulently joined where plaintiff alleged that "Merck withheld and concealed and misrepresented the true facts regarding Vioxx; and yet, without alleging any factual basis for the charge, plaintiff conclude[d] that [physician] 'knew or should have known' the truth about Vioxx").

21. Other courts faced with pharmaceutical cases have also denied remand in similar circumstances, finding that plaintiffs cannot simultaneously allege concealment by the manufacturer and negligence by the healthcare professionals who prescribed or distributed the drug at issue. *See, e.g., Chiles v. Am. Home Prods. Corp.*, No. 4:03-CV-802-A, slip op. at 4 (N.D. Tex. Sept. 26, 2003) (attached as Exhibit C) (finding doctors fraudulently joined and denying remand where plaintiffs had alleged misrepresentation against a drug manufacturer that "negate[d] any possible liability of the physicians"); *In re Rezulin Prods. Liab. Litig.*, 2003 U.S. Dist. LEXIS 28, MDL No. 1348, Case No. 02-Civ. 3583 (S.D.N.Y. Jan. 6, 2003) (Exhibit D) (finding fraudulent joinder where failure to warn claims against a physician were premised on knowledge allegedly withheld); *Baisden v. Bayer*, 275 F. Supp. 2d 759, 763 (S.D. W. Va. 2003) (physician fraudulently joined where "gravamen of the malpractice case against [physician] is his failure to know what allegedly was deliberately hidden" by drug manufacturer"); *In re Rezulin Prods. Liab. Litig.*, No. 00 Civ. 2843, 2002 U.S. Dist. LEXIS 24436, *2 (S.D.N.Y. Dec. 18, 2002) (Exhibit E) (non-diverse physician defendant fraudulently joined where "main tenor or plaintiffs' complaint is that [drug] was an unsafe drug and that the manufacturers concealed its risks from the public, physicians, and others"); *In re Diet Drugs*, 220 F. Supp. 2d 414, 424 (E.D. Pa. 2002) (same); *Louis v. Wyeth-Ayerst Pharms., Inc.*, No. 5:000 CV 102 LN, slip. op. at 2 (S.D. Miss. Sept. 25, 2000) (Exhibit F) (insufficient individual factual allegations where

allegation of in-state defendant's knowledge were contradicted by general allegations that the pharmaceutical manufacturer concealed or misrepresented information).

22. The Complaint, on its face, demonstrates that the plaintiffs' claim against the health care provider relates to the providers' alleged negligence in prescribing Bextra®. To the extent, however, that the plaintiffs contend that any of their claims are independent and unrelated to their claims against Pfizer, those claims could not properly be joined in the same suit because they do not both involve common questions of law or fact and do not assert joint, several, or alternative liability arising from the same transaction, occurrence, or series of transactions or occurrences. *See In re Rezulin Prods. Liab. Litig.*, 2003 U.S. Dist. LEXIS 9173 at *2-3, MDL 1348, 00 Civ. 2843 (S.D.N.Y. June 2, 2003) (attached as Exhibit G) and Fed. R. Civ. P. 20. Claims that are misjoined must be ignored for purposes of determining removal jurisdiction. *See Rezulin*, 2003 U.S. Dist. LEXIS 9173 at *2-3.

**B.    The Amount in Controversy Requirement is Satisfied.**

23. The plaintiffs' allegations clearly meet the amount-in-controversy threshold. The plaintiffs allege that Charles Brady suffered a heart attack, and that his use of Bextra® was a substantial factor in causing this event, as well as subsequent injury and damage. (*E.g.* Compl. ¶ 1.) The plaintiffs also allege that as a result of taking these medications, Charles Brady has sustained pain and suffering and loss of enjoyment of life; incurred medical and other expenses; and has suffered loss of earnings and permanent impairment of the power to labor and earn money. (Compl. ¶¶ 155-157.) As a result of these alleged injuries, the plaintiffs are seeking unlimited compensatory and punitive damages, statutorily authorized attorneys' fees, pre- and post-judgment interest, and such other relief as the Court deems "just and proper." (Compl. ¶¶ 116, 160; *id.* at 33 (Prayer for Relief at A, B, C, E.))

24.    Where liability is demonstrated, Kentucky juries in product liability cases routinely render verdicts in excess of $75,000 exclusive of interest and costs. *See, e.g., Morales v. American Honda Motor Co.*, 151 F.3d 500 (6th Cir. [Ky.] 1998). Further, where liability is shown, Kentucky appellate courts have consistently upheld verdicts in excess of $75,000 in such cases. *See id.; Sufix, U.S.A., Inc. v. Cook*, 128 S.W.3d 838 (Ky. App. 2004).

25.    Likewise, federal courts around the country have ruled that the amount-in-controversy threshold was met in actions alleging personal injuries caused by prescription medications. *See, e.g., Morgan v. Merck & Co.*, NO. 3:03cv435WS, slip op. at 2 (S.D. Miss. Mar. 29, 2004); *Benavidez v. Merck & Co.*, No. L-03-134, slip op. at 1 (S.D. Tex. Apr. 6, 2004); *Stubblefield v. Merck & Co.*, Civ. No. H-02-3139, slip op. at 1 (S.D. Tex. Oct. 8, 2002); *Zeedyk v. Merck & Co.*, No. 02-C-4203, slip op. at 1 (N.D. Ill. August 30, 2002); *Abrusley v. Merck & Co.*, No. 02-0196, slip op. at 2 n.2 (W.D. La. June 18, 2002); *Jones v. Merck & Co.*, Civ. No. 02-00186, slip op. at 2 (D. Haw. June 5, 2002). (Slip opinions attached collectively, as Exhibit H.) These courts were all presented with complaints seeking actual damages for personal injuries caused by a prescription medication, and all found, either explicitly or implicitly, that the requirements for federal diversity jurisdiction, including the amount in controversy, were satisfied.[2]

---

[2] Furthermore, the amount-in-controversy requirement plainly is satisfied because plaintiffs request statutory attorney's fees pursuant to their Kentucky Consumer Protection Act claim. *See* Compl. ¶ 116; *see generally Am. Nat'l Property & Cas. Co. v. Shafaghi*, No. 2003-CA-000792-MR, 2004 WL 2366807, at *2 (Ky. App. Oct. 22, 2004) (recognizing KRS 367.220(3), under which the instant plaintiffs seek to recover, "provides for the allowance of attorneys' fees and costs arising from a successful prosecution for a violation of the Kentucky Consumer Protection Act") attached as Exhibit I. Indeed, the Sixth Circuit recently held that in determining the amount-in-controversy, "statutorily authorized attorneys' fees" must be considered "for purposes of establishing jurisdiction." *Williamson v. Aetna Life Ins. Co.*, __ F. 3d __, 2007 U.S. App. LEXIS 6597, at *6-7 (6th Cir. Mar. 22, 2007) (recognizing that attorney's fees sought under Tennessee Consumer Protection Act are considered in determining the amount-in-controversy) attached as Exhibit J. Thus, it is unquestionably "more likely than not" that the amount-in-controversy requirement is satisfied. *Id.* at *4

26. If any question arises as to the propriety of the removal of this action, the removing defendants respectfully request the opportunity to brief any disputed issues and to present oral argument in support of their position that this case is properly removable.

WHEREFORE, defendant Pfizer Inc. respectfully removes this action from the Jefferson Circuit Court of Kentucky, Case No. 07-CI-002826, to this Court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.

Dated this 12th day of April, 2007.

s/Sarah G. Cronan
Carol Dan Browning
Sarah G. Cronan
STITES & HARBISON, PLLC
400 West Market Street, Suite 1800
Louisville, KY 40202-3352
Telephone: (502) 587-3400
Facsimile: (502) 587-6391
COUNSEL FOR DEFENDANT, PFIZER INC.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was electronically filed using the CM/ECF System and that a copy was mailed, first-class mail, postage pre-paid, to the following on this 12th day of April, 2007.

| | |
|---|---|
| Jeffrey K. Branstetter<br>BLANTON & BRANSTETTER, LLC<br>705 Meigs Avenue<br>Jeffersonville, Indiana 47130<br>*Counsel for plaintiffs* | David B. Gazak<br>Darby & Gazak<br>10400 Linn Station Road, Suite 226<br>Louisville, KY 40223<br>*Counsel for Robert S. Tillett, Jr., M.D. and Louisville Neurology Associates PSC* |

s/Sarah G. Cronan
*Counsel for Defendant, Pfizer Inc.*

599803:1:LOUISVILLE